**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFERY R. WERNER, | : CIVIL ACTION NO.:  19-cv-02818 |
| | : |
| *Plaintiff*, | : |
| v. | : |
| | : |
| BOREDOM THERAPY, LLC, CONTENT IQ, | : |
| LLC, ASAF KATZIR, AND DOES 1-5 | : |
| | : |
| *Defendants.* | : |
| | : |
| | : JURY TRIAL DEMANDED |
| | : |
| | : |

## CIVIL ACTION COMPLAINT

Plaintiff, Jeffery R. Werner ("Mr. Werner") alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this Complaint for direct, contributory, and vicarious copyright

infringement against the Defendants under the copyright laws of the United States, 17 U.S.C. §

101, *et seq*., requesting actual or statutory damages stemming from Defendants' for-profit,

unauthorized exploitation of Mr. Werner's copyrighted photographic images.

## ADDRESSES

2.      The address of each named party is as follows: Jeffery R. Werner, 4910 1/4

McConnell Ave., Los Angeles, CA 90066; Boredom Therapy, LLC, 135 Madison Avenue,

New York, NY 10016-6712; Content IQ, LLC, 135 Madison Avenue, New York, NY

10016-6712, and Asaf Katzir, 135 Madison Avenue, New York, NY 10016-6712.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the copyright infringement

claim, with jurisdiction vested in this Court pursuant to 28 U.S.C. § 1331 (federal question

jurisdiction) and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights).

4.      This Court has general personal jurisdiction over the Defendants because they are located and present and regularly conduct business in New York City.

5.      Venue in this judicial district is proper under 28 U.S.C. § 1400(a) (venue in copyright actions) in that each Defendant may be found in this District.  In addition, venue is proper under 28 U.S.C. §1391(b)(1) (Defendants' residence) and 28 U.S.C. § 1391(b)(2) (where actions occurred).

## PARTIES

6.      Plaintiff, Mr. Werner, is an individual residing in Los Angeles, California. He is the owner of the copyrights to some of the photographs that are the subject of this action.

7.      Defendant, Boredom Therapy, LLC ("Boredom Therapy"), is a New York corporation that, on information and belief, is a publisher of www.boredomtherapy.com ("boredomtherapy.com"), www.moneyversed.com ("moneyversed.com"), and www.honesttopaws.com ("honesttopaws.com").

8.      Defendant, Content IQ, LLC ("Content IQ"), is a New York corporation that claims on its website that some of the websites that Plaintiff alleges infringed his work are its "brands."  On information and belief, Boredom Therapy changed its name to Content IQ, LLC on November 7, 2018, but continues to operate Boredom Therapy as a business distinct from Content IQ.

9.      Defendant, Asaf Katzir, is the founder and Chief Operating Officer of Boredom Therapy and Content IQ, LLC.

10.      Defendants Does 1 through 5, inclusive, are other parties not yet identified

who have infringed Plaintiff's copyrights, have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual, or otherwise, of Defendants Does 1 through 5, inclusive, are presently unknown to Plaintiff who therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

## FACTS

### Mr. Werner's Works

11.     Plaintiff, Mr. Werner, has over 35 years of experience as a professional photographer.  His work has appeared in magazines world-wide as covers, features, and editorial coverage in publications such as *Life, Time, Newsweek, People, Marie Claire, FHM, Smithsonian, Playboy, Maxim, In Touch, Daily Mail, Penthouse, Psychology Today, Stern, Country Weekly, Page Six Sunday Magazine* (NY Post), and many others.

12.     Mr. Werner is also well-known for his work with exotic animals, celebrities in their homes, remote aboriginal peoples, sideshow eccentrics, and people who have overcome incredible obstacles.  Mr. Werner has a growing "outsider art" reputation, and his work was the subject of a retrospective gallery exhibition at the Annenberg Space for Photography in Los Angeles.

13.     Mr. Werner earns his livelihood through the sale and licensing of his photographs and photography services.  He owns and operates a syndication service, Incredible Features, Inc.

14.     Mr. Werner created several photos, referenced in Exhibit "1" (the "Werner Infringements Chart") attached to this Complaint.  Exhibit "1" lists of the works that

Plaintiff alleges are at issue in this action.

## BOREDOMTHERAPY.COM INFRINGEMENTS

15.     Defendant, Boredom Therapy, owns and operates a website at www.boredomtherapy.com where it publishes various videos, images, and other content.

### Airplane Home Publication

16.     On June 9, 2014, Mr. Werner registered with the Copyright Office a collection of photographs titled "Airplane Home – Stills" as VA 1-917-856.  *See* registration with relevant deposit image at Exhibit "2" ("Airplane Home Photograph").

17.     On August 9, 2014 Mr. Werner – acting though his syndication company, Incredible Features, Inc., and its European licensing agency at the time, Barcroft Media  – syndicated a photo feature in the *Telegraph*  using the Airplane Home Photograph and several other photographs not here at issue.  *See Telegraph* Airplane Home publication at Exhibit "3."

18.     On December 24, 2015 Boredom Therapy published an article which it claimed was written by "Boredom Therapy Staff" Maggie Watson on boredomtherapy.com.  That article copied one of the Airplane Home Photographs.  *See* Exhibit "4" ("BT Airplane Home First Accused Work").

19.     Boredom Therapy also copied Mr. Werner's Airplane Home Photograph to its Facebook page on December 24, 2015.  *See* BT Airplane Home Second Accused Work at Exhibit "27."

20.     Boredom Therapy recopied Mr. Werner's images used in the BT Airplane Home Accused Work to its server.  *See* server images used in the BT Airplane Home First Accused Work at Exhibit "5."

21.     Mr. Werner discovered the BT Airplane Home Accused Work on or about September 26, 2018.

22.     Boredom Therapy had no license to copy and display the Airplane Home Photograph in the BT Airplane Home Accused Work.

**First BT Pet Coyote Publication May 2016**

23.     On December 17, 2013 Mr. Werner registered with the Copyright Office a collection of photographs titled "Coyote is Household Pet" as VA 1-920-166.  *See* registration with relevant deposit images at Exhibit "6" ("Pet Coyote Photographs").

24.     On January 14, 2014 Mr. Werner – acting though his licensing company, Incredible Features, Inc. – syndicated a photo feature in the *Daily Mail* using the Pet Coyote Photographs and several other photographs.  *See Daily Mail* post at Exhibit "7."

25.     On May 5, 2016 Boredom Therapy published an article on boredomtherapy.com which copied six of the Pet Coyote Photographs.  *See* Internet Archives capture of webpage at Exhibit "8" ("First BT Pet Coyote Accused Work").  That article originally appeared without an author but later authorship was credited to Maggie Watson as "Boredom Therapy Staff" in a version of the accused work that was otherwise unrevised.  *See* Exhibit "9."

26.     Boredom Therapy recopied Mr. Werner's images used in the First BT Pet Coyote Accused Work to its server.  *See* server images used in the First BT Pet Coyote Accused Work at Exhibit "10."

27.     Boredom Therapy had no license to copy and display the Pet Coyote Photographs in the First BT Pet Coyote Accused Work.

**Second BT Pet Coyote Publication May 2018**

28.     On July 25, 2018 Boredom Therapy republished the BT Pet Coyote Accused Work with altered text and format using thirteen (13) images from the Pet Coyote Photographs.  *See* Exhibit "11" ("Second BT Pet Coyote Accused Work").

29.     Boredom Therapy recopied Mr. Werner's images used in the Second BT Pet Coyote Accused Work to its server.  *See* server images used in the Second BT Pet Coyote Accused Work at Exhibit "12."

30.     Boredom Therapy had no license to copy and display the Pet Coyote Photographs in the Second BT Pet Coyote Accused Work.

**Discovery Of Infringements
And Demand For Back-license**

31.     Brian R. Wolff, the licensing agent for Mr. Werner's syndication company, Incredible Features, Inc., discovered uses of Mr. Werner's Airplane Home and Pet Coyote Photographs by Boredom Therapy and related websites in or around September 26, 2018.

32.     On November 6, 2018 Mr. Wolff wrote to Boredom Therapy objecting to its infringing uses of Mr. Werner's work and offering to issue back-licenses for the infringing uses.  *See* Exhibit "13."

33.     Boredom Therapy refused to negotiate the purchase of back-licenses for the work it exploited without a license.

**Giraffe Woman Accused Publication January 2019**

34.     On May 19, 2016 Mr. Werner registered with the Copyright Office a collection of photographs titled "Giraffe Woman Stills" as VAu 1-253-880.  *See* registration with relevant deposit image at Exhibit "14" ("First Giraffe Woman Photographs").

35.     On November 22, 2016 Mr. Werner registered with the Copyright Office a collection of photographs titled "Giraffe Woman Without Rings" as VAu 1-276-595. *See* registration with relevant deposit image at Exhibit "15" ("Second Giraffe Woman Photographs").

36.     On March 16, 2017 Mr. Werner – acting though his licensing company, Incredible Features, Inc. – syndicated a photo feature in the *Daily Mail* using the First and Second Giraffe Woman Photographs and several other photographs. *See Daily Mail* article at Exhibit "16."

37.     On January 28, 2019 Boredom Therapy published an article that it claimed was written by "Boredom Therapy Staff" Matthew Castoral on boredometherapy.com which copied one of the First Giraffe Woman Photographs and two of the Second Giraffe Woman Photographs. *See* Exhibit "17" ("BT Giraffe Woman Accused Work").

38.     Boredom Therapy recopied Mr. Werner's images used in the BT Giraffe Woman Accused Work to its server. *See* server images used in the BT Giraffe Woman Accused Work at Exhibit "18."

39.     Boredom Therapy had no license to copy and display the First or Second Giraffe Woman Photographs in the Giraffe Woman Accused Work.

40.     After receiving Mr. Wolff's letter in November 2018 objecting to unauthorized use of Mr. Werner's work, and after refusing to back-license its infringing uses, Boredom Therapy committed three additional infringements of Mr. Werner's work in January, 2019 when it posted the BT Giraffe Woman Accused Work.  It committed the new infringements with full knowledge that Mr. Werner objected to unauthorized uses of his work.

### HONESTTOPAWS.COM INFRINGEMENTS

41.     Defendant Boredom Therapy owns and operates a website at www.honesttopaws.com where it posts various videos, images, and other content.

### First HTPaws Pet Coyote Publication April 2017

42.     On April 21, 2017 Boredom Therapy published an article it claimed was written by "Megan1" on honesttopaws.com at the display URL "honesttopaws.com/coyote-pup." *See* Exhibit "19" ("First HTPaws Accused Work").

43.     The First HTPaws Accused Work copied ten of Mr. Werner's Pet Coyote Photographs (the third and fifth through twelfth photos).

44.     On April 21, 2017, Boredom Therapy also published an article identical to the First HTPaws Accused Work at the display URL "honesttopaws.com/coyote-pup/0/?bdk=a702aol."  On information and belief, that additional publication represents a different use which Boredom Therapy published to receive a separate income stream.

### Second HTPaws Pet Coyote Publication July 2018

45.     On July 18, 2018 Boredom Therapy published an article it claimed was written by Maggie Watson on honesttopaws.com at the display URL "honesttopaws.boredomtherapy.com/coyote-family/."  *See* Exhibit "20" ("Second HTPaws Accused Work").

46.     The Second HTPaws Accused Work copied thirteen of Mr. Werner's Pet Coyote Photographs (the fourth, sixth, seventh, ninth, eleventh through nineteenth photos).

47.     Boredom Therapy recopied Mr. Werner's images used in the HTPaws Pet Coyote First and Second Accused Work to its server.  *See* server images used in the First and Second HTPaws Accused Work at Exhibits "21" and "22."

48.     After receiving Mr. Wolff's letter in November 2018 objecting to unauthorized use of Mr. Werner's Pet Coyote Photographs, and after refusing to back-license its infringing uses, Boredom Therapy took down some of Mr. Werner's works but it continues to display one of Mr. Werner's images on its current Second HTPaws Accused Work webpage.  *See* version of Second HTPaws Accused Work dated February 25, 2019 at Exhibit "23."

49.     Boredom Therapy had no license to copy and display the Pet Coyote Photographs in the First and Second HTPaws Accused Works.

## MONEYVERSED.COM INFRINGEMENT

50.     Defendant Boredom Therapy owns and operates a website at www.honesttopaws.com where it posts various videos, images, and other content.

51.     On June 7, 2018 Boredom Therapy published an article it claimed was written by "Evelyn H. Armstrong" on moneyversed.com that copied Mr. Werner's Airplane Home Photograph.  *See* Exhibit "24" (the "Moneyversed Accused Work").

52.     Boredom Therapy recopied Mr. Werner's images used in the Moneyversed Accused Work to its server.  *See* server image used in the Moneyversed Accused Work at Exhibit "25."

53.     Boredom Therapy had no license to copy and display the Airplane Home Photograph in the Moneyversed Accused Work.

## HEADCRAMP.COM INFRINGEMENT

54.     Defendant Boredom Therapy owns and operates a website at www.headcramp.com where it posts various videos, images, and other content.

55.     On November 26, 2018 Boredom Therapy published an article it claimed was

written by "Maggie Watson" on headcramp.com that copied Mr. Werner's Pet Coyote

Photographs.  *See* Exhibit "28" (the "Headcramp Accused Work").

56.     Boredom Therapy recopied Mr. Werner's images used in the Headcramp

Accused Work to its server.  *See* server image used in the Headcramp Accused Work at

Exhibit "29."

57.     Boredom Therapy had no license to copy and display the Pet Coyote

Photographs in the Headcramp Accused Work.

### BOREDOM THERAPY REMOVED MR. WERNER'S COPYRIGHT MANAGEMENT INFORMATION

**DMCA Violations in First and Second BT Airplane Home Accused Works**

58.     Werner's Airplane Home Photograph was published by authorized licensees

with the copyright management information ("CMI") stating, "Photo: Incredible

Features/Barcroft Media."  *See* Exhibit "3."

59.     Boredom Therapy copied and republished the work twice with the CMI

removed. *See* Exhibits "4" and "27."

60.     On information and belief, reinforced by the facts below showing a practice of

cropping CMI from infringed images, Werner alleges that Boredom Therapy removed the

CMI from his Airplane Home Photograph to obscure infringement or republished the images

knowing that CMI was removed.

### DMCA Violations In First BT Pet Coyote Accused Work

61.     Mr. Werner's Pet Coyote work was distributed by Incredible Features and

originally published by authorized  licensees with copyright management information

("CMI") stating: "© Incredible Features/Barcroft M."  That CMI was inscribed as a

watermark within every image.  *See* CMI on images in the *Daily Mail* authorized publication at Exhibit "7."

62.     The images used in the *Daily Mail's* 2014 authorized Pet Coyote feature were stored on the *Daily Mail's* server.  All of the *Daily Mail* server images contain Mr. Werner's CMI watermarks and each has a URL name including the identifier "article-2539136-…" *See Daily Mail* Pet Coyote server images at Exhibit "26."

63.     The First BT Pet Coyote Accused Work published in May 2016 displayed Mr. Werner's CMI in three images (the sixth, eighth, and ninth on pp. 3-4) with gutter credits to the *Daily Mail* as Boredom Therapy's source.  *See* First BT Pet Coyote Accused Work pp. 3-4 at Exhibit "8."

64.     The First BT Pet Coyote Accused Work also displayed three of Mr. Werner's Pet Coyote Photographs with the CMI removed (the fourth, fifth, and seventh).  Boredom Therapy "credited" those three scrubbed images to "fishki.net," a Russian website.  *Id.*

65.     The images used in Boredom Therapy's 2016 First BT Pet Coyote Accused Work were each stored as copies on Boredom Therapy's server each having a unique URL name.  *See* Exhibit "10."

66.     Each of the three images that Boredom Therapy published in the First BT Pet Coyote Accused Work with Mr. Werner's CMI (the sixth, eighth, and ninth on pp. 3-4) incorporated a large portion of the server names used by the *Daily Mail* for that same image. For example, in 2014 the *Daily Mail* named the server image of the coyote sleeping on the girl's bed while she read a book as "article-2539136-1AA6A56500000578-



512_634x420.jpg":

*See* Exhibit "26." Likewise, Boredom Therapy saved the same image to its server in 2016

incorporating the *Daily Mail's* URL name "article-2539136-1AA6A56500000578-

512_634x420.jpg":



*See* Exhibit "10." Boredom Therapy incorporated the *Daily Mail*'s unique URL server names into Boredom Therapy's own server URL names.

67.     Despite knowing that the Pet Coyote Photographs were all published with a copyright notice crediting Mr. Werner's company, Incredible Features, Boredom Therapy republished three images scrubbed of CMI in the First BT Coyote Accused Work.

**DMCA Violations In The Second BT Pet Coyote Accused Work**

68.     On July 25, 2018 Boredom Therapy revised the Pet Coyote feature to create the Second BT Pet Coyote Accused Work using thirteen of Mr. Werner's images.  It then removed all of Werner's CMI, *including* that which was appeared in the First BT Pet Coyote Accused Work.  For example, this an image infringed in the First BT Pet Coyote Accused Work with visible watermarked CMI:



*See* Exhibit "8."

69.     This is the same image infringed in the Second BT Pet Coyote Accused Work:



See Exhibit "11."  Boredom Therapy removed the watermark CMI from the photographs

when it revised the work for its expanded republication in 2018 by cropping the bottom of

the image.

70.    Likewise, three server copies of images used in the 2016 First BT Pet Coyote

Accused Work were stored with Mr. Werner's CMI watermark.   For example:



*See* Exhibit "10."  But, when revising the accused work for republication in 2018, Boredom

Therapy cropped the CMI from the bottom of its server copy.  For example:



*See* Exhibit "12."

71.     The Second BT Pet Coyote Accused Work published, *without* CMI, thirteen Pet Coyote Photographs which Boredom Therapy knew were published *with* CMI in the *Daily Mail*. Indeed, Boredom Therapy itself published three of them with CMI in the First BT Pet Coyote Accused Work.  *See* Exhibits "8" and "9."  It also published seven of them with CMI in the First HTPaws Accused Work.  *See* Exhibit "19."

### DMCA Violations In The First HTPaws Accused Work

72.     The First HTPaws Accused Work allegedly written by "Megan1" published on April 21, 2017 copied ten of Mr. Werner's Pet Coyote Photographs.  It published seven with Mr. Werner's watermark CMI and credited three to the *Daily Mail*.  For example:



*See* First HTPaws Accused Work at Exhibit "19."

73.     The server copies of three of the images in the First HTPaws Accused Work still incorporated the *Daily Mail's* server URL name "article -2539136-1AA6A86000000578-[image number]_634x415.jpg."  *See* fifth, eighth, and tenth image in Exhibit "21."

74.     Boredom Therapy published three of the ten images in the First HTPaws

Accused Works without CMI knowing that the images were a set all of which were published in the *Daily Mail* with Mr. Werner's CMI.

### DMCA Violations In The Second HTPaws Accused Work

75.     The Second HTPaws Accused Work allegedly written by Maggie Watson published on May 5, 2018 copied thirteen of Mr. Werner's Pet Coyote Photographs including the seven that Boredom Therapy originally published *with* CMI in the First HTPaws Accused Work.  It published all of them *without* the watermark CMI which it cropped out:



*Compare* Exhibit "19" to Exhibit "20."

76.     The ten Pet Coyote Photographs used in the First HTPaws Accused Works were stored on Boredom Therapy's server.  Seven (7) of those images stored on Boredom Therapy's server were inscribed with watermarks containing Mr. Werner's CMI.  All thirteen server copies of the Pet Coyote Photographs used in the Second HTPaws Accused Work and stored on Boredom Therapy's server were cropped at the bottom to remove their watermarks

containing Mr. Werner's CMI.  For example:



*Compare* Exhibits "21" and "22."

### DMCA Violations In The BT Giraffe Woman Accused Work

77.     The images in Boredom Therapy's source, the *Daily Mail,* are inscribed with CMI watermarks.  *See* Exhibit "16."

78.     Boredom Therapy's 2019 BT Giraffe Woman Accused Work has gutter credits sourcing the images to the *Daily Mail*.  *See* Exhibit "17."

79.     While it acknowledges the *Daily Mail* as the source of Mr. Werner's images used in the BT Giraffe Woman Accused Work, Boredom Therapy republished the images with Mr. Werner's watermark CMI removed.

80.     Boredom Therapy cropped the bottom of its images to remove Werner's CMI:



*Compare* Boredom Therapy's copy at left to its source publication at right.  *See* Exhibits "16" and "17."

### DMCA Violations In The Headcramp Accused Work

81.     The Headcramp Accused Work used the same images as the Second HTPaws Accused work, slightly reordered with slight variation in the captions.  *Compare* Exhibits 20 to 28.

82.     The Headcramp Accused Work linked to and republished the same server images as the Second HTPaws Accused work.  *Compare* Exhibits 22 to 29.

83.     After scrubbing Mr. Werner's CMI for its July 2018 publication of the HTPaws Accused Work, Boredom Therapy republished the scrubbed images as the Headcramp Accused Work.

<u>COUNT I</u>
**Against Boredom Therapy and Does 1 through 5**
**(Copyright Infringement, 17 U.S.C. § 501)**

84.     Plaintiff incorporates the allegations contained in paragraphs 1-83 above.

85.     Plaintiff is the authors and/or copyright owners of the Photographs.

86.     Defendants Boredom Therapy and Does 1 through 5 (the "Direct Infringers")
have reproduced, displayed, distributed or otherwise copied the Photographs without
Plaintiff's license or authorization.

87.     The actions and conduct of the Direct Infringers, as described above, infringed
upon the exclusive rights granted to photographers under 17 U.S.C.A. 106 to display,
reproduce and distribute their work to the public.  Such actions and conduct constitute
copyright infringement under the Copyright Act of 1976, 17 U.S.C.A. 501.

88.     Plaintiff has complied in all respects with 17 U.S.C. §§ 101 et seq., and
secured and registered the exclusive rights and privileges in and to the copyrights of the
above-referenced works pursuant to 17 U.S.C. § 408.

89.     Having timely registered their copyright in the Photographs, Plaintiff is
entitled to elect statutory damages under 17 USC § 412 and § 504(c), in an amount of not
less than $750 or more than $30,000 per infringement of each work.

90.     Plaintiff alleges, on information and belief, that Defendants conducted their
businesses by routinely exploiting photographic images without payment to, and without
obtaining licenses from, copyright owners.  Such commercial piracy in an industry in which
copyrights are prevalent and well-understood will support an award of enhanced statutory
damages for willful infringement under Section 504(c)(2) of the Copyright Act in the sum of
up to ($150,000.00) per infringed work.

91.     In the alternative, Plaintiff is entitled to elect recovery of its actual damages and Defendants' profits attributable to the infringement of the Photographs, pursuant to 17 U.S.C. 504(b).

92.     Within the time permitted by law, Plaintiff will make their election between actual damages and profit disgorgement, or statutory damages.

93.     Prior registration also entitles Plaintiff to seek an award of attorney's fees pursuant to 17 USC § 412 and § 505.

94.     Plaintiff is further entitled to pre-judgment interest on either actual or statutory damages.

## COUNT II
### Against Boredom Therapy, Asaf Katzir, and Does 1-5
### (Vicarious And/Or Contributory Copyright Infringement)

95.     Plaintiff incorporates all the allegations of paragraphs 1 through 94.

96.     Defendants Boredom Therapy,  Asaf Katzir, and Does 1-5 (the "Secondary Infringers") are secondarily liable for the infringements committed by the Direct Infringers.

97.     The Secondary Infringers contributed to, induced, or assisted infringements by the Direct Infringers.  The Secondary Infringers infringed while acting as the principal of the Direct Infringers by directing and controlling the Direct Infringers' use of technology, facilities, and support services at boredomtherapy.com.

98.     The Secondary Infringers had, or should have had, knowledge of the infringements of the Direct Infringers who were his or their employees, contractors, or agents.  Further, the Photographs were published on the Secondary Infringer' website and the Secondary Infringers were, or should have been, aware of that fact.  As the owner or controller of the website, the Secondary Infringers knew, or should have known, that the

Direct Infringers did not have licenses to use Plaintiff's images.

99.     Secondary Infringers had the right and ability to supervise the infringing activity that all the Direct Infringers committed because the infringements occurred on the Defendants' website and programs.

100.     Defendants obtained some financial benefit from the infringement of Plaintiff's rights in the Photographs because he or they published advertisements and links to other content in connection with the Photographs and because they were a draw for viewers regardless of the revenue received from advertising.  Accordingly, he or they had an incentive to permit infringement by the Direct Infringers.

101.     As a direct and proximate result of said acts of secondary infringement, Plaintiff suffered damages in an amount to be proven at trial.

102.     Plaintiff is entitled to actual damages and disgorgement of direct and indirect profits realized by the Secondary Infringers in an amount to be proven at trial or, at Plaintiff's election, statutory damages.

103.     Within the time permitted by law, Plaintiff will make his election between actual damages and profit disgorgement, or statutory damages, depending upon which is larger.

104.     Plaintiff is further entitled to seek its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

105.     Plaintiff is further entitled to pre-judgment interest on either actual or statutory damages.

## COUNT III
### Against All Defendants
### (Violation of Digital Millennium Copyright Act)

106.    Plaintiff incorporates all the allegations of paragraphs 1 through 105 above.

107.    On information and belief, Defendants intentionally removed or altered copyright management information ("CMI") from registered images in violation of 17 U.S.C. § 1202(b) in order to induce, enable, facilitate, or conceal infringement in violation of 17 U.S.C.A. § 1202.

108.    In the alternative, on information and belief, Defendants  distributed, imported for distribution, and published works or copies of works knowing that copyright management information has been removed or altered by a third party without authority of the copyright owner or the law, in violation of 17 U.S.C. § 1202(b)(3).

109.    Defendants had reasonable grounds to know that its misconduct would induce, enable, facilitate or conceal infringement.

110.    On information and belief, Defendants' actions were knowing, willful, reckless, and so warrant enhanced damages and penalties.

111.    Plaintiff is entitled to statutory damages of from $2,500 to $25,000 per work for each of the DMCA violations per 17 U.S. Code § 1203(c)(3)(B).

112.    Plaintiff is further entitled to his attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(4) and (5).

113.    Plaintiff is further entitled to pre-judgment interest on either actual or statutory damages.

**RELIEF**

WHEREFORE, Plaintiff requests judgment Boredom Therapy, Asaf Katzir, and Does 1 through 5 for:

1.      A finding that Defendants infringed Plaintiff's copyright interests in the Photographs by copying and displaying them and for using them to create derivative works for commercial purposes without any license or consent;

2.      An award of actual damages and disgorgement of all of Defendants' profits attributable to the infringement, as provided by 17 U.S.C. §504, in an amount to be proven at trial or, in the alternative, at Plaintiff's election, statutory damages in the amount of $750.00 to $150,000 per work for infringement pursuant to 17 U.S.C. §504(c)(1) or (2), whichever is larger;

3.      An award of actual damages and disgorgement of all of Defendants' profits attributable to the infringement, as provided by 17 U.S.C. §1203(c), in an amount to be proven at trial or, in the alternative, at Plaintiff's election, statutory damages for willful infringement pursuant to 17 U.S.C. §1203(c) in the amount of $2,500 to $25,000 per work, whichever is larger;

4.      An order, pursuant to 17 U.S.C. 502(a), enjoining Defendants from any further infringing use of any of Plaintiff's works.

5.      An order, pursuant to 17 U.S.C. §§ 502 and 503, requiring Defendants to turn over to Plaintiff all copies of the Photographs made or used in violation of the exclusive right of the copyright owner; all plates, tapes, film negatives, or other articles by means of which such copies may be reproduced; and records documenting the manufacture, sale, or receipt of things involved in any such violation.

6.      A finding that Defendant violated the Digital Millennium Copyright Act, 17

U.S.C. 1202, by knowingly removing Plaintiff's CMI from his photographs or by distributing copies that it knew or should have known had CMI removed;

7.      An award of Plaintiff's attorney's fees and costs pursuant to 17 U.S.C. § 505.

8.      An award of Plaintiff's attorney's fees and costs pursuant to 17 U.S.C. §1203.

9.      Pretrial interest.

10.     Such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully submitted,
**SPECTOR GADON & ROSEN, P.C.**

By: */s/ Bruce Bellingham*
   Bruce Bellingham, Esquire
   David B. Picker, Esquire
   1635 Market Street, 7th Floor
   Philadelphia, PA 19103 (215) 241-8916
   *bbellingham@lawsgr.com*
March 29, 2019          *dpicker@lawsgr.com*
   *Attorneys for Plaintiff*